UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY J. THOMAS, | : | No. 4:24-CV-1077 |
| | : | |
| Plaintiff | : | (Mehalchick, J.) |
| | : | |
| v. | : | (Caraballo, M.J.) |
| | : | |
| FRANK BISIGNANO, Commissioner of Social Security Administration, | : | |
| | : | |
| Defendant | : | |

## REPORT & RECOMMENDATION

### I. Introduction

Plaintiff Kimberly Thomas seeks judicial review of the final decision of the Commissioner of Social Security Administration ("the Commissioner") denying her application for disability benefits under Title XVI of the Social Security Act. The Court has jurisdiction pursuant to Title 42, United States Code, Section 405(g).

This matter was referred to the undersigned to prepare a Report and Recommendation addressing the merit of an alleged error that Administrative Law Judge ("ALJ") Michelle Wolfe committed when determining that Thomas was not disabled under the Social Security Act. Namely, Thomas claims that the ALJ failed to evaluate her as

someone of "advanced age" instead of "closely approaching advanced age," when she was only approximately 8½ months away from meeting the 55-year threshold for qualifying as "advanced age." Doc. 15 at 4–5. According to Thomas, had the ALJ considered her a "Borderline Age Situation" that qualified for the advanced age category, she would have been found disabled. *Id.* at 5.[1] The matter is fully briefed and ripe for decision.

As explained below, an analysis of the applicable regulations and interpretive authorities concludes that ALJ Wolfe appropriately categorized Thomas as an applicant closely approaching advanced age, and was not required to conduct a borderline situation analysis. The ALJ's conclusion was supported by substantial evidence in the record, coupled with sufficient reasoning to permit meaningful judicial review. Accordingly, the undersigned respectfully recommends that the District Court affirm the Commissioner's decision to deny Thomas's claim for social security disability benefits.

---

[1] As the Commissioner correctly observes, medical evidence is irrelevant to this appeal because Thomas raises only one legal issue—her age. Doc. 19 at 7 n.2. Therefore, this Report and Recommendation contains minimal discussion of medical evidence.

## II. **Background**

On July 6, 2021, Thomas applied for social security disability benefits, alleging complete disability from depression; anxiety disorder; asthma; knee, hip, and back problems; bipolar disorder; hypotension; ADHD; and sleep problem. Tr.[2] 58–59. At the time of the application, Thomas was 52 years old. *Id.* at 29. The Social Security Administration ("SSA") denied Thomas's application on December 10, 2021. *Id.* at 91–94. Thomas requested reconsideration, but her application was denied again on August 16, 2022. *Id.* at 102–04. Thomas accordingly requested and received a hearing. *Id.* at 14, 105.

The hearing, held on July 13, 2023, concerned whether Thomas was disabled within the meaning of the Social Security Act since July 6, 2021, the application date. *Id.* at 19. ALJ Wolfe evaluated clinical records, medical history, medical expert reports, vocational expert testimony, and Thomas's own testimony. *Id.* at 38–57. Based on the evidence, the ALJ denied Thomas's disability claim on August 24, 2023, finding that she was not disabled during the period at issue. *Id.* at 14–

---

[2] The administrative record, referred to herein as "Tr.," encompasses Docs. 11, 11-1, 11-2, 11-3, 11-4, 11-5, 11-6, 11-7.

31. At the time of the ALJ's decision, Thomas was 54 years old. *Id.* at 29. ALJ Wolfe reached her conclusion by employing a five-step analytical process required under the Social Security Act to evaluate disability insurance and supplement security income claims. *See* 20 C.F.R. § 404.1520(a)(4).

The process requires sequential consideration of: (1) whether the claimant is engaged in substantial gainful work activity; (2) the medical severity of the claimant's impairments; (3) whether the impairment meets or equals a defined list of impairments; (4) a comparison between the claimant's past relevant work and residual functional capacity, i.e., the most work that a claimant can perform despite his or her limitations, *see id.* § 404.1545(a); and (5) an assessment of the claimant's residual functional capacity and his or her age, education, and work experience. *Id.* § 404.1520(a)(4)(i)–(v). Should a claimant proceed past the first three steps, the Commissioner will not find the claimant disabled when he or she can perform past relevant work under the third step or adjust to other work under the fourth step. *Id.* § 404.1520(a)(4)(iv)–(v), (f), (g).

Applying that analysis, the ALJ first determined that Thomas did not engage in substantial gainful activity since her alleged disability onset date of July 6, 2021. Tr. 19. At the second step of the analysis, the ALJ found that Thomas suffered from thirteen severe impairments: asthma, emphysema, chronic obstructive pulmonary disease, degenerative disc and joint diseases, osteoarthritis, patellofemoral syndrome, major depressive disorder, bipolar disorder, generalized anxiety disorder, alcohol use disorder, and insomnia. *Id.* at 19–20.

Moving to the third step of the analysis, the ALJ determined that Thomas's impairments failed to meet or medically equal one of the impairments listed in the SSA's regulations. *Id.* at 20–23; *see also* 20 C.F.R. § 404.1520(a)(4)(iii). Accordingly, the ALJ proceeded to determine Thomas's residual functional capacity before addressing the final two steps in the sequential analysis. Based on the medical evidence of record, which included Thomas's own testimonies and other medical evidence on her physical impairments, the ALJ concluded that Thomas had "the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)," subject to a series of listed limitations. Tr. 24.

Having determined Thomas's residual functional capacity, ALJ Wolfe proceeded to the fourth step of the analysis. Here, the ALJ noted that Thomas had no relevant past work, rendering the transferability of job skills irrelevant to her application. *Id.* at 29–30. ALJ Wolfe also observed that Thomas attended school through the ninth grade. *Id.* Of particular relevance to this Report and Recommendation, the ALJ stated:

> The claimant was born on May 10, 1969, and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 C.F.R. 416.963).
>
> The claimant was fifty-two years of age as of the application date and is currently fifty-four years of age, and, therefore, has been an individual closely approaching advanced age for the entire relevant time period.

*Id.* at 29.

Finally, in the fifth step of the sequential analysis, ALJ Wolfe considered Thomas's age, education, work experience, and residual functional capacity to perform light work, concluding that Thomas "[wa]s capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 30–31. Here, the ALJ leveraged testimony provided by vocational expert Nancy Shapero that a person fitting Thomas's parameters could meet the

requirements of "representative occupations" such as a price marker, file clerk, or hand bander. *Id.* at 30.

As a result of this analysis, ALJ Wolfe determined that Thomas was not disabled and denied her application for disability benefits. *Id.* at 14–16. Thomas unsuccessfully appealed the denial to the SSA's Appeals Council. *Id.* at 1–3. This appeal to the District Court followed on July 1, 2024. Doc. 1. The Commissioner provided the requisite transcripts from the disability proceedings on August 20, 2024. Docs. 10–11. The parties then filed their respective briefs. Docs. 15, 19.

Thomas alleges a single error purportedly warranting reversal or remand. Doc. 15 at 3. Specifically, Thomas alleges that the ALJ "did not consider the possibility of a borderline situation, when [she] was only approximately eight months from the [advanced] age category . . . at the time of the ALJ decision."[3] *Id.*

---

[3] Thomas also raises an issue about the fact that she was "just four days from the same at the time of the Appeals Council denial of her request for review." Doc. 15 at 3. But, since the Appeals Council denied Thomas's request for review instead of issuing a merit-based opinion, the administrative decision is the final decision that is subject to judicial review. 20 C.F.R. §§ 416.1400(a)(3) ("If you are dissatisfied with the reconsideration determination, you may request a hearing before an administrative law judge."), (4) ("If you are dissatisfied with the decision of the administrative law judge, you may request that the Appeals Council review the decision."), (5) ("When you have completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section, we will have made our final decision. If you are dissatisfied with our final decision, you may request

## III. Discussion

### A. Standard of Review

Review of the Commissioner's decision denying a claimant's application for social security disability benefits is limited to determining whether the factual findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial in this context is "more than a mere scintilla of evidence but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citation omitted).

Under this deferential standard, "[f]actual findings which are supported by substantial evidence must be upheld." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) (citations omitted); 42 U.S.C.

---

judicial review by filing an action in a Federal district court."), 416.1455(b) ("The decision of the administrative law judge is binding on all parties to the hearing unless—You or another party requests a review of the decision by the Appeals Council within the stated time period, the Appeals Council denies your request for review, and you seek judicial review of your case by filing an action in a Federal district court."), 416.1481 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court."); *see also Sims v. Apfel*, 530 U.S. 103, 107 (2000) (establishing that, if "the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision." (citations omitted)).

§ 405(g). This court's role is not to reweigh the evidence and make factual determinations, but to simply review the record and ensure that the ALJ provided "a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations and quotations omitted).

Here, ALJ Wolfe's factual finding that Thomas fell under the "closely approaching advanced age" category was supported by substantial evidence in the record, and the reasoning underlying that conclusion was sufficiently articulated to permit judicial review.

### B.   Thomas's Age Category

Thomas asserts that the ALJ erred by deeming her an applicant closely approaching advanced age. Doc. 15 at 3. Specifically, Thomas contests the ALJ's failure to consider her a "borderline situation," as she was "only approximately eight months from the next age category . . . at the time of the ALJ decision." *Id.*[4] According to Thomas, her case warrants a remand, because that 8½-month gap qualified as "a few

---

[4] There is no dispute that, as the Commissioner observes, Thomas was "54 years, 3 months, and 15 days old" on the date of the ALJ's decision. Doc. 19 at 7.

9

months" prior to her 55th birthday. *Id.* at 5. This argument, however, runs contrary to policy, appellate authority, and the plain meaning of the phrase. Thus, the ALJ was not required to consider evaluate Thomas as a borderline situation in the first instance.

At the fifth step of the sequential analysis, the ALJ considers the claimant's residual functional capacity with vocational factors, which include the claimant's age. 20 C.F.R. § 416.920(g). There are three age categories under the current regulation: (1) "younger," or under age 50, *id.* § 416.963(c); (2) "closely approaching advanced age," or between ages 50 and 54, *id.* § 416.963(d); and (3) "advanced age," or age 55 or older. *Id.* § 416.963(e). These three categories are not applied mechanically. *See, e.g., id.* §§ 416.963(c), (e). Rather, if the claimant is "within a few days to a few months of reaching an older age category" and the difference between the two age categories is material to determining the claimant's disability status, the ALJ must "consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case." *Id.* § 416.963(b).

The failure to analyze whether a borderline applicant should fall into an older age category is a reversible error of law. *Lucas v.*

*Barnhart*, 184 F. App'x 204, 206–08 (3d Cir. 2006). First, however, the applicant must qualify as a borderline situation to trigger the ALJ's consideration of whether an older age category is appropriate. 20 C.F.R. § 416.963(b) ("*If* you are within a few days to a few months of reaching an older age category . . . we will consider whether to use the older age category . . . .") (emphasis added). As Thomas fails to meet that prerequisite threshold, ALJ Wolfe was not obligated to conduct a borderline situation evaluation.

While the regulatory framework lacks a definition on what the phrase "a few days to a few months" means, other sources establish that the period does not exceed six months. For one thing, the ordinary meaning of the word "few" is "a small number." *See, e.g., Few*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com (last visited July 24, 2025). In accordance with the plain definition, the SSA added a guideline on March 25, 2016, providing that "[t]he word 'few' should be defined using its ordinary meaning, e.g., a small number." *HA 01220.042 Borderline Age*, PROGRAM OPERATIONS MANUAL SYSTEM (POMS), https://secure.ssa.gov/apps10/poms.nsf/lnx/2501220042 (last visited July 24, 2025). Indeed, the SSA "considers [']a few days to a few

11

months['] to mean a period *not to exceed six months.*" *Id.* (emphasis added). As is relevant here, the "few days to a few months" is evaluated based on the period following the date of the ALJ's decision, i.e., the "date of adjudication and the date the claimant attains age 55 . . . ." *Id.*

Thus, the 8½ months between ALJ Wolfe's decision and Thomas's 55th birthday exceeds the six-month guideline set by the SSA and the plain meaning of the phrase "a few months." The Court of Appeals has endorsed an even more conservative interpretation, affirming an ALJ's classification of an application as "younger" even when an applicant was less than six months from her 50th birthday. *Roberts v. Barnhart*, 139 F. App'x 418, 420 (3d Cir. 2005) ("Nor is there any authority extending the benefits of a 'borderline' age determination to persons like Roberts who are within five (5) to six (6) months of their fiftieth birthday.")

Further, as the Commissioner correctly notes, Doc. 19 at 12, 15–17, at least six other Courts of Appeals—including the Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth—have rejected arguments similar to those advanced by Thomas here. *See, e.g., Ard v. O'Malley*, 110 F.4th 613, 615, 617–21 (4th Cir. 2024) (six months and 17 days); *Fontenot v.*

*Colvin*, 661 F. App'x 274, 277 n.1 (5th Cir. 2016) (per curiam) (over 11 months); *Henry v. Comm'r of Soc. Sec'y*, 678 F. App'x 392, 394–95 (6th Cir. 2017) (per curiam) (over six months); *Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012) (eight months); *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988) (seven months); *Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996) (same).

Thomas seeks to leverage several decisions from other district courts in the Third Circuit that found periods of up to ten months from the next age category threshold sufficient to warrant borderline situation consideration. Doc. 15 at 7–8 (citing *Rosado v. Bowen*, 1986 WL 15004, at *4 (E.D. Pa. 1986); *Istik v. Atrue*, 2009 WL 382503, at *4 (W.D. Pa. 2009); *Williams v. Bowen*, 1987 WL 9148, at *2 (E.D. Pa. 1987); *Rodriguez v. Astrue*, 2014 WL 317873, at *3 (E.D. Pa. 2014); *Bennett v. Sullivan*, 1990 WL 122912, at *5 (E.D. Pa. 1990)). All of those decisions, however, were issued before the SSA's 2016 guidance that set six months as the approximate ceiling for "a few months." *HA 01220.042 Borderline Age*, PROGRAM OPERATIONS MANUAL SYSTEM (POMS), https://secure.ssa.gov/apps10/poms.nsf/lnx/2501220042 (last visited July 24, 2025). "Since this internal guidance to adjudicators

became effective, courts nationally have been more willing to accept *six months* as the outer limit on proximity to the next age category, and to require consideration when a claimant age is within that range." *Schneider v. Comm'r of Soc. Sec.*, 2022 WL 3280109, at *4 (E.D. Pa. 2022) (emphasis in original).

ALJ Wolfe set forth Thomas's chronological age, and noted that she was between ages 52 and 54 during the pendency her disability claim. Tr. 29. The ALJ thus acted well within her discretion when deeming Thomas "an individual closely approaching advanced age" at the time of the decision, without deigning to conduct any borderline situation analysis. *Id.* As Thomas failed to establish a reversible legal error and the ALJ set forth the evidence leading to her conclusion, the undersigned recommends that the Court affirm the administrative decision.

## IV.  Recommendation

For the forgoing reasons, it is **RECOMMENDED** that the District Court **AFFIRM** the Commissioner's decision, **DIRECT** that judgment be entered in the Commissioner's favor, and **INSTRUCT** the Clerk to

close this case. The parties are further placed on notice that, pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

M.D. Pa. L.R. 72.3. The failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights. *See Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007).

Date: July 30, 2025          **_s/ Phillip J. Caraballo_**
                             Phillip J. Caraballo
                             United States Magistrate Judge

16